Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
joe@sarecheklawfirm.com, (646) 517-5420
zachary@sarecheklawfirm.com (646) 519-4396
*Special Litigation Counsel for Lenard E. Schwartzer, Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WELSCORP, INC.<br><br><div align="right">Debtor.</div> | Case No.  BK-S-19-18056-ABL **(Lead Case)**<br><br>**Consolidated under BK-S-19-18056-ABL with:**<br><br>Case No. BK-S-20-11597-ABL<br>Case No. BK-S-20-11211-ABL<br>Case No. BK-S-20-11215-ABL<br><br>Chapter 7 |
| ☐ Affects Einstein Sports Advisory Ltd.<br>☐ Affects QSA LLC<br>☐ Affects Wellington Sports Club, LLC<br>☐ Affects Welscorp, Inc.<br>☒ Affects All Debtors | |
| LENARD E. SCHWARTZER, in his capacity as CHAPTER 7 TRUSTEE<br><div align="center">Plaintiff,</div><br><div align="center">vs.</div><br>KENNETH BANKSTON<br><div align="center">Defendant.</div> | **ADVERSARY PROCEEDING**<br><br>Case No. BK-S-21-01186-ABL<br><br>**MOTION FOR DEFAULT JUDGMENT AGAINST KENNETH BANKSTON**<br><br>Date of Hearing:  March 24, 2022<br>Time of Hearing:  10:00 a.m.<br>Place:[1]    Foley Federal Building<br> Bankruptcy<br> 300 Las Vegas Blvd. South<br> Las Vegas, Nevada |

Plaintiff Lenard E. Schwartzer, in his capacity as Chapter 7 Trustee in the above-captioned bankruptcy case, ("Trustee" or "Plaintiff"), by and through his counsel Zachary E. Mazur and

---

[1] Pursuant to Administrative Order 2020-05, all hearings are currently being heard telephonically.  More information and instructions on telephonic hearings in this District can be found at the website: www.nvb.uscourts.gov/news-rss/announcements/2020/0319-court-hearing-participation.

Joseph E. Sarachek of Sarachek Law Firm, hereby files this Motion for Default Judgment (the "Motion") against Defendant Kenneth Bankston ("Bankston" or "Defendant") for his failure to answer or otherwise respond to the Complaint pursuant to Rules 55(a) of the Federal Rules of Civil Procedure ("FRCP"), incorporated by Rule 7055 of the Federal Rules of Bankruptcy Procedure and Rule 7055 of the Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada (the "Local Rules").   The Trustee asks this Court to enter judgment against Defendant in the proposed form included herein as **Exhibit A**.

This Motion is supported by the following (i) Memorandum of Points and Authorities; (ii) the Affidavit of Zachary E. Mazur, Esq. In Support of the Request for Entry of Default Against Kenneth Bankston, which was filed with this Court pursuant to FRCP 55(a) on December 3, 2021 (the "Mazur Affidavit" Docket no. 9); and (iv) the Affidavit of Marc B. Ross in Support of Motion for Default Judgment Against Kenneth Bankston (the "Ross Affidavit", a copy of which has been filed contemporaneously herewith).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Statement of Facts

Plaintiff is Lenard E. Schwartzer, in his capacity as Chapter 7 Trustee in In Re Welscorp, Inc., et al. Case No: BK-S-19-18056-ABL (lead case) in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy"), filed on December 20, 2019. The Bankruptcy substantively consolidates the estates of Welscorp Inc. ("Welscorp"), Einstein Sports Advisory Ltd. ("Einstein"), QSA LLC ("QSA"), Wellington Sports Club LLC ("Wellington"), Vegas Basketball Club LLC ("Vegas Basketball"), Vegas Football Club LLC ("Vegas Football"), Boston Biometrics LLC ("Boston Biometrics"), Sports Psychometrics LLC ("Sports Psychometrics"), ESA Ltd. ("ESA"), No-More-Bad-Hires, Inc. ("No-More-Bad-Hires"), Thomas Becker ("Becker") and John F. Thomas, III (aka Jonathan West) ("Thomas," collectively, the "Debtors").

From at least August 2014 through the present, and using nearly a dozen entities, Debtor principals John F. Thomas, III (aka John Rodgers, Jonathan West, John Frank and John Marshall) and Thomas Becker (the "Debtors' Principals") have raised at least $29.5 million from over 600 investors in more than 40 states.    Thomas and Becker raised the funds by offering investors pooled investment contracts whereby they obtained the opportunity to share in purported profits generated from a proprietary sports betting system. Investors were enticed with the possibility of extraordinary returns.  In reality, however, the entities used less than 15% of the capital raised to bet on sporting events.  The rest was squandered and stolen by the Debtors' principals.

On August 30, 2019, the Securities and Exchange Commission ("SEC") filed a civil complaint in the U.S. District Court, District of Nevada, (the "District Court" and the "SEC Action," Securities and Exchange Commission v. John Thomas et al. Case no. 19-cv-01515, Hon. Andrew. P. Gordon) against Thomas, Becker, the Debtors (except No-More-Bad-Hires), and other related parties, alleging multiple securities violations.    In that complaint, a copy of which was included as an exhibit to the complaint in this Adversary Proceeding (Adversary Proceeding Dkt. No. 1-1), the SEC describes a fraudulent Ponzi scheme whereby Thomas and Becker used the entities for their own personal gain.

On December 4, 2019, the District Court granted the SEC's motion for a preliminary injunction against the Debtors, enjoining them from defrauding more investors and placing an immediate freeze on their monies and assets.

Meanwhile, on December 20, 2019, (the "Petition Date") three defrauded Investors in Welscorp filed an involuntary petition for Chapter 7 relief in the U.S. Bankruptcy Court for the District of Nevada, initiating the Bankruptcy.   (Bankruptcy, Dkt. No. 1].  The original Bankruptcy matter would eventually be substantively consolidated with those of the rest of the

Debtors on June 29, 2020.  (the "Consolidation Order," Bankruptcy, Dkt. No. 89).  In the Consolidation Order, the Petition Date was extended to the entire consolidated estate.

Postpetition, on October 27, 2020, a Grand Jury indicted Debtors' principals Thomas and Becker for conspiring to commit wire fraud and thirteen counts of wire fraud.  ("Indictment," copy of which was included as an exhibit to the Adversary Proceeding complaint, Adversary Proceeding Dkt. No. 1-3).   In the Indictment, the Grand Jury alleges that Thomas and Becker ran a Ponzi scheme.  *Id.* ¶ 2.b.

Despite the success of the SEC action, despite the Indictment and despite the relief granted by the Bankruptcy Court, Investors in the Debtor entities have been left destitute, many having lost their life savings.   The Trustee has not been able to locate any substantial assets of the Debtors.   It is possible that the only assets of the consolidated Bankruptcy estate consist of causes of action against transferees.  Complicating matters further, the Debtors have not appeared in the Bankruptcy proceedings, much less have they filed the requisite schedules or aided the Trustee in his efforts to locate assets.

On information and belief, Defendant Bankston is an individual residing in Suisun City, California, who received a combination of commissions and net "winnings" stemming from his involvement in the Debtors' Ponzi Scheme.  Those "winnings" were fictitious – in fact they were paid out of the principal invested by victims of that same scheme.   On or about October 26, 2021 the Trustee filed a complaint (the "Complaint") against Defendant with the Bankruptcy Court, giving rise to the instant Adversary Proceeding.   The Complaint seeks to recover the commissions and net "winnings" that Defendant received, over and above the return of principal, in the amount of $98,645.35[2] (the "Net Transfers").   The Net Transfers are

---

[2] The Bankston Ledger shows that in the four-year lookback period, Defendant received $108,663.00 from the Debtors and contributed $10,017.65 into the Debtors' accounts.   Recognizing the existence of a potentially valid defense, the Trustee only seeks to recover the transfers to Defendant that are net Defendant's contribution.

more fully detailed in Exhibit "D" to the Adversary Complaint (Adversary Proceeding, Dkt. No. 1-4, the "Bankston Ledger").

Defendant has not answered the Complaint, and on December 7, 2021 the Clerk of Court entered Default against him (Adversary Proceeding, Dkt. No. 10).  Now, having sufficiently demonstrated the veracity of the facts set forth in the Complaint, and having had no response from Defendant, the Trustee hereby moves this Court for Entry of Default Judgment for Plaintiff to recover from Defendant Bankston the amount of ninety-eight thousand six hundred forty-five dollars and thirty-five cents ($98,645.35).

## LEGAL ARGUMENT

### A.  Standard for Granting a Motion for Default Judgment.

Under Federal Rule of Civil Procedure 55(b), incorporated by reference by Fed. R. Bankr. P. 7055, a plaintiff may apply to the Court for—and the Court may grant—a default judgment against a defendant who has failed to plead or otherwise defend an action. See Draper v. Coombs, 792 F.2d 915, 925 (9th Cir. 1986). The Court must consider the following factors when deciding whether to use its discretion to grant a motion for default judgment: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claim; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

However, because the standard is discretionary, default judgments are more often granted than not. See PepsiCo., Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999). Moreover, the general rule is that once the clerk enters default, the factual allegations of the complaint – save those alleging damages – are accepted as true. See TeleVideo Systems, Inc. v.

Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); see also Benny v. Pipes, 799 F.2d 489, 494 (9th Cir. 1986) (citing Thomson v. Wooster, 114 U.S. 104, 114 (1884)). Once the Clerk of the Court has entered default, the Clerk or the Court may enter a default judgment upon request of the plaintiff pursuant to Fed. R. Civ. P. 55(b).

**B. Plaintiff has Satisfied the Procedural Requirements for Entry of a Default Judgment.**

Plaintiff properly served Defendant pursuant to Fed. R. Bankr. P. 7004(b)(1). (Dkt. No. 5).  On the basis of Defendant's failure to answer or respond and pursuant to Fed. R. Civ. P. 55(a), incorporated by Fed. R. Bankr. P. 7055, the Clerk of the Court entered Default against him on December 7, 2021. (Dkt. No. 10).  The Clerk's Entry of Default was properly noticed on December 8, 2021 (Dkt. No. 11)

On information and belief, Defendant is not in the active military service of the United States, are not under 18 years of age, and is not an incompetent person. (Mazur Affidavit ¶ 9). There is no procedural impediment to entering default judgment against Defendant.

**C. Each Eitel Factor Favors Entry of Default Judgment Against Defendant.**

An analysis of each of the factors identified in Eitel favors entry of a judgment by default against Defendant and judgment declaring the avoidance of the Net Transfers in the amount of $98,645.35.

*1. Possibility of Prejudice to Plaintiff.*

Defendant has defaulted.  He has not appeared, timely or otherwise, in these proceedings.   Plaintiff will suffer prejudice if a default judgment is not entered against Defendant because Plaintiff will otherwise be denied the right to judicial resolution of his Complaint in this action, and consequently, will be denied recourse for recovery. See Philip

<u>Morris USA, Inc. v. Castworld Products, Inc.</u>, 219 F.R.D. 494, 499 (C.D. Cal. 2003). The first factor favors entry of a default judgment against Defendant.

2. ***Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint.***

Both the second and third Eitel factors – the merits of Plaintiff's claims and the sufficiency of the Complaint – favors entry of a default judgment against Defendant. The evidence before the Court indicates that Plaintiff is likely to succeed on the merits of claims for relief, in particular, that the Net Transfers to Defendant are avoidable and the amounts transferred to they should be returned to the bankruptcy estate for the benefit of creditors. The law supports this conclusion as explained in detail below.

Section 548 of the Bankruptcy Code allows the trustee to claw back certain transfers made by the Debtors. Specifically:

> "the trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A)."

Moreover, section 544 of the Bankruptcy Code allows the trustee to claw back certain transfers on behalf of the creditors as allowed by state law: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1).

Nevada codified the relevant state law under the section 112.180 of the Nevada Revised Statutes: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,

whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor." Nev. Rev. Stat. Ann. § 112.180(1)(a). This provision allows the trustee to reach back to transactions "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Nev. Rev. Stat. Ann. § 112.230(1)(a).

Section 112.190 listed two situations where a transfer is deemed fraudulent. First, transactions made to a creditor "whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Nev. Rev. Stat. Ann. § 112.190(1). The timing requirement for such transaction is "within 4 years after the transfer was made or the obligation was incurred." Nev. Rev. Stat. Ann. § 112.230(1)(b). Second, a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. Nev. Rev. Stat. Ann. § 112.190(2). The timing requirement for such transaction is "within 1 year after the transfer was made or the obligation was incurred." Nev. Rev. Stat. Ann. § 112.230(c).

A qualification on the avoidable transfers is specified in the section 112.220 of the statute: "the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection 3 of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (a) The first transferee of the asset or

8

the person for whose benefit the transfer was made; or (b) Any subsequent transferee other than a transferee who took in good faith for value or from any subsequent transferee." Nev. Rev. Stat. Ann. § 112.220(2).   This section also allows for two defenses against trustee's avoidance action: "A transfer or obligation is not voidable under paragraph (a) of subsection 1 of NRS 112.180 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Nev. Rev. Stat. Ann. § 112.220(1).  Neither of these defenses may be asserted by Defendant, for the reasons stated *infra*.

In Nevada, the elements for an avoidance action are the same for federal law and state law. To prevail on his claims of fraudulent transfers made with the actual intent to hinder, delay or defraud creditors, the Trustee must show that:

(1) debtors transferred an interest in property to the defendant; and

(2) debtors transferred the property during the applicable lookback period—one year prior to the petition under 11 U.S.C. § 548, and four years after the transfer for Nevada's version of the Uniform Fraudulent Transfer Act ("UFTA"); and

(3) debtors made the transfer with actual intent to hinder, delay, or defraud a present or future creditor. 11 U.S.C. § 548(a)(1)(A); NEV.REV.STAT. § 112.180.1(a). In re Nat'l Audit Def. Network, 367 B.R. 207, 218–19 (Bankr. D. Nev. 2007).

The difficulty in pursuing fraudulent conveyance claims, of course, lies in the challenge of proving actual fraudulent intent.   Because it now seems obvious that the Debtors were running a Ponzi Scheme, the Trustee should benefit from a presumption of the transferor's fraudulent intent.  "The mere existence of a Ponzi scheme" is sufficient to establish actual intent under § 548(a)(1) or a state's equivalent to that section. In re AFI Holding, Inc., 525 F.3d 700, 704 (9th Cir. 2008).   The SEC, though an exhaustive reconstruction of the Debtors' books and records, performed by an experienced forensic accountant, has already determined

that the Debtors were running a Ponzi scheme.  *See* Decl. of Deborah Russell in Supp. of Plaintiff SEC's Mem. of Points and Authorities in Supp. of its Mot, for a Prelim. Inj., (the "Russell Decl.", ¶¶ 39, 40(i), 42(c), a copy of which was included as Exhibit B to the Complaint, Docket no. 1-2).   The Indictment also describes the Debtors as having run a Ponzi scheme.  See Indictment at 3.

The Net Transfers are composed of both commissions and net "winnings" paid ou to Defendant.   Both are avoidable.   Commissions paid out to agents who raise investor funds to perpetrate a Ponzi Scheme are avoidable and not subject to common avoidance action defenses.    In In re Randy, 189 B.R. 425 (Bankr. N.D. Ill. 1995), the court observed that several Circuit courts, including the Ninth Circuit, have ruled that contract that underlies the transaction between the investors and the Ponzi scheme Debtor is illegal, and "this argument applies even more forcefully to brokers who have received commissions for helping perpetrate the Ponzi scheme." *Id*. at 441. Therefore, a transferee in a Ponzi scheme receiving agent commissions cannot asset an equivalent value defense because "any contracts of the Defendants would be unenforceable, and no value was or could legally be given pursuant thereto to the Debtor or the Debtor's bankruptcy estate." *Id*.

Net winnings paid out to innocent investors in a Ponzi Scheme are avoidable and not subject to the common avoidance action defenses.    In a Ponzi Scheme, "the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers: The money used for the underlying investments came from investors gulled by fraudulent representations." Donell v. Kowell, 533 F.3d 762, 766 (9th Cir. 2008).   The Ninth Circuit allows innocent investors who received transfers from a Ponzi Scheme in good faith to retain those transfers only to the extent that they can be considered a return of principal. *Id* at 772.    Thus, in the instant case, even if

Defendant can show that he was an innocent investor who received money from the Debtors in good faith, that defense would not be valid as to the avoidance and recovery of the Net Transfers, which were over and above the investment amount.

Section 550 of the Bankruptcy Code states that "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer ... and (2) any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a)."

### 3. Sum of Money at Stake in the Action.

Bankston received $98,645.35 as an investor and a commissioned agent in the Debtor's scheme. The composition of the Net Transfers was compiled, in detail, based on a review of the Debtors' bank records and based on a report by the Trustee's forensic accountant at HBM Management Associates, LLC ("HBM"). The Bankston Ledger describing the Net Transfers was filed as Exhibit "D" to the Adversary Complaint. With the default, the Bankston Ledger and the amount of the Net Transfers are now taken as true. HBM's Marc Ross has also sworn to the veracity of the Bankston Ledger, affirming that he is in custody of all of the underlying documents that were used to formulate those reports. Ross Affidavit ¶¶ 6-9. The Net Transfers should be recoverable under the abovementioned preference and fraudulent conveyance theories.

### 4. Possibility of Dispute Concerning Material Facts.

The fifth Eitel factor considers the possibility that a material issue of fact exists in the case. Eitel, 782 F.2d at 1471-72. Here, however, Defendant never answered the Adversary Complaint. Therefore, the allegations of the Complaint are taken as true. Elektra Entm't Group, Inc. v. Crawford, 226 F.R.D. 388, 393. Both of the principal allegations: that Debtors were running a Ponzi Scheme, and that Defendant received the Net Transfers as an investor

and commissioned agent of that Ponzi scheme, have thus been established.  This factor also supports entry of a default judgment in favor of the Plaintiff against the Defendant.

### 5. Default Not Due to Excusable Neglect.

Under the sixth Eitel factor, the Court is asked to look at whether the failure of the Defendant to answer or otherwise respond to the Complaint is or may be the result of excusable neglect. See Eitel, 782 F.2d at 1471-72. Indisputably, Defendant was properly served with the Complaint and Summons on October 28, 2021.  (Dkt. No. 5).  More than 2 months have passed since that time.   Subsequently, Defendant was served a copy of the Entry of Default.  (Dkt. No. 11).  He still has not appeared in these proceedings.    Accordingly, this factor warrants entry of default judgment against Defendant.

### 6. Policy Favoring Decisions on the Merits.

The final Eitel factor examines the strong public policy of determining cases on the merits whenever possible. See Eitel, 782 F.2d at 1472. However, because the Defendant has utterly failed to answer or otherwise respond to the Complaint, a decision on the merits is impractical, if not impossible. As such, public policy considerations do not prevent entry of default judgment herein.

### D. Plaintiff Should Recover the Remedies Prayed for in the Complaint.

As explained above, an examination of the Eitel factors substantially weighs in favor of Plaintiff's request for entry of default judgment avoiding the transfers made to Defendant, and this Court should therefore exercise its discretion pursuant to Rule 55(b)(2) in granting this Motion.  Plaintiff should recover remedies prayed for in the Complaint, pursuant to Fed. R. Civ. P. 54(c). That rule provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In the instant Motion, Plaintiff is seeking a judgment against Defendant: (a) avoiding the Net Transfers free and clear of any interest of Defendant, (b) directing that the Net Transfers be set aside, and (c) ordering Defendant to pay to Plaintiff $98,645.35.   The Trustee is not seeking to recover costs against the Defendant.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter default judgment in the amount of ninety-eight thousand six hundred forty-five dollars and thirty-five cents ($98,645.35) against Defendant Kenneth Bankston, substantially in the form included herein as **Exhibit A**.

Dated this 20th day of January 2022          SARACHEK LAW FIRM

/s/ Zachary E. Mazur
Zachary E. Mazur, *pro hac vice*
670 White Plains Road, Fl. PH
Scarsdale, NY 10583
Email:  zachary@saracheklawfirm.com
*Special Counsel to Plaintiff Trustee*